| | |
|---|---|
| JULIUS HUFF,<br><br>    Plaintiff,<br><br>v.<br><br>CHARITY WINGS PROJECT, INC.;<br>d/b/a CHARITY WINGS; DAY-STAR<br>CHRISTIAN ACADEMY, INC.,<br>CAROLYN KELLY; and GEORGE<br>KELLY,<br><br>    Defendants. | CIVIL ACTION NO. |

# COMPLAINT

Plaintiff Julius Huff brings this Complaint for damages and other relief against Defendants Charity Wings Project, Inc., Day-Star Christian Academy, Inc., Carolyn Kelly, and George Kelly (collectively, "Defendants") and alleges as follows.

## NATURE OF THE ACTION

1. This is an action for unpaid minimum wages and unpaid overtime wages in violation of the Fair Labor Standards Act under 29 U.S.C. § 201 *et. seq.*, ("FLSA").

## PARTIES

2. Plaintiff Julius Huff ("Plaintiff") is a citizen of Georgia and resides in Paulding County, Georgia.

3. Defendant Charity Wings Project, Inc. ("Charity Wings") is a Georgia

Corporation with its principle office located at 6180 Old National Highway, College Park, Georgia 30349.

4. Charity Wings may be served with process by delivering a copy of the Summons and this Complaint to Charity Wings' registered agent, John Ross, located at 3707 Main Street, College Park, Georgia 30349.

5. Day-Star Christian Academy ("Day-Star") is a Georgia corporation with its principle office located at 2299 Godby Road, College Park, Georgia 30349.

6. Day-Star Christian Academy may be served with process by delivering a copy of the Summons and this Complaint to Day-Star's registered agent, Carolyn Kelly, located at 6180 Old National Highway, College Park, Georgia 30349.

7. Defendant Carolyn Kelly ("C. Kelly") is a natural person and resident of Georgia.

8. C. Kelly may be served at 2950 Sandy Circle, Riverdale, Georgia 30296, or wherever she may be found.

9. Defendant George Kelly ("G. Kelly") is a natural person and resident of Georgia.

10. G. Kelly may be served at 2950 Sandy Circle, Riverdale, Georgia 30296, or wherever he may be found.

## JURISDICTION

11. The Court has original jurisdiction over Plaintiff's claims for violation of the FLSA pursuant to 28 U.S.C. § 1331, because these claims raise questions of federal law.

12. The Court has personal jurisdiction over Charity Wings, because Charity Wings is a Georgia corporation doing business in Georgia.

13. The Court has personal jurisdiction over Day-Star, because Day-Star is a Georgia corporation doing business in Georgia.

14. The Court has personal jurisdiction over C. Kelly because she is a resident of Georgia.

15. The Court has personal jurisdiction over G. Kelly because he is a resident of Georgia.

## VENUE

16. Under 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Northern District of Georgia.

17. Pursuant to Local Rule 3.1(B)(3) and § 1391(d), venue is proper in the Atlanta Division, because the activity from which the cause of action arose took place in Clayton County.

## FACTUAL ALLEGATIONS SHOWING THAT PLAINTIFF IS COVERED BY THE FLSA

18. In approximately February 2017, Plaintiff began working for Defendants C. Kelly, G. Kelly, Day-Star, and Charity Wings.

19. Day-Star operates two preschools within the Metro Atlanta area.

20. Plaintiff performed custodial and handyman work for Day-Star.

21. Plaintiff also processed Day-Star's payroll.

22. Defendant C. Kelly is the CEO of Day-Star.

23. Defendant C. Kelly is a co-owner of Day-Star.

24. As the CEO of Day-Star, C. Kelly directed Plaintiff to perform work on behalf of Day-Star.

25. C. Kelly had the authority to direct Plaintiff to perform work on behalf of Day-Star.

26. On information and belief, Defendant G. Kelly is a co-owner of Day-Star.

27. C. Kelly directed Plaintiff to perform work on behalf of Day-Star.

28. For example, C. Kelly directed Plaintiff to process the payroll for Day-Star.

29. G. Kelly had the authority to direct Plaintiff to perform work on behalf of Day-Star.

30. G. Kelly directed Plaintiff to perform work on behalf of Day-Star.

31. For example, G. Kelly directed Plaintiff to perform custodial and maintenance tasks on behalf of Day-Star.

32. Plaintiff did in fact perform work on behalf of Day-Star, such as maintenance, custodial services, and processed payroll.

33. Day-Star, through C. Kelly, set Plaintiff's work schedule.

34. Day-Star provided the materials used by Plaintiff to perform these tasks.

35. Charity Wings is a corporation which, in part, rents residential properties to individuals.

36. Charity Wings rents some or all of its properties using funds under the Housing Choice Voucher Program, commonly known as Section 8 housing.

37. Charity Wings solicits and/or receives funds from out-of-state individuals and/or entities.

38. Charity Wings also provides maintenance services for businesses for which Charity Wings receives monetary compensation.

39. Plaintiff was employed by Charity Wings as a Junior Director.

40. Defendant C. Kelly hired Plaintiff has a Junior Director of Charity Wings.

41. Plaintiff also performed maintenance and custodial work for Charity Wings.

42. Charity Wings provided Plaintiff the materials to perform these tasks.

43. Defendant C. Kelly is the Chairman of Charity Wings.

44. Defendant C. Kelly is the Chairman of Charity Wings and therefore has control of the day-to-day operations of Charity Wings.

45. Defendant G. Kelly has operational control over the daily operations of Charity Wings.

46. By way of example, Defendant G. Kelly directed Plaintiff and other similarly situated individuals to perform work on properties owned in whole or in part by Charity Wings.

47. Defendant G. Kelly directed Plaintiff and other similarly situated individuals to perform maintenance services for businesses for which Charity Wings receives monetary compensation.

48. As the Chairman, Defendant C. Kelly has operational control over the day-to-day operations of Charity Wings.

49. As the Chairman of Charity Wings, C. Kelly is responsible for the policy making for Charity Wings.

50. C. Kelly had the authority to direct Plaintiff to perform work on behalf of Charity Wings.

51. Charity Wings, through C. Kelly, had control over Plaintiff's work schedule and directed when Plaintiff was to perform work on behalf of Charity Wings.

52. As the Chairman of Charity Wings, C. Kelly regularly directed Plaintiff to perform work on behalf of Charity Wings.

53. By way of example, C. Kelly directed Plaintiff to perform tasks as the Junior Director of Charity Wings.

54. Charity Wings provided the materials used by Plaintiff to perform these tasks.

55. Defendants C. Kelly and G. Kelly own and operate several residential buildings in the Metro Atlanta area.

56. C. Kelly and G. Kelly hired Plaintiff to work for them as a laborer and handyman on the residential properties they own and operate.

57. C. Kelly directed Plaintiff to perform laborer and handyman work at properties she owns and/or operates, in whole or in part.

58. G. Kelly directed Plaintiff to perform laborer and handyman work at properties he owns and/or operates, in whole or in part.

59. As a laborer and handyman for C, Kelly and G. Kelly, Plaintiff provided general maintenance and lawncare services.

60. Moreover, Plaintiff provided cleaning services at the properties owned by C. Kelly and/or G. Kelly.

61. Defendant C. Kelly provided Plaintiff with the materials to perform these tasks.

62. Defendant G. Kelly provided Plaintiff with the materials to perform these tasks.

63. Some of the properties owned and operated by C. Kelly and/or G. Kelly provide housing under Section 8.

64. As such, Defendants C. Kelly and/or G. Kelly received federal funds for the houses rented under Section 8.

65. Part of Plaintiff's job duties required him to correct deficiencies in the properties Defendants C. Kelly and G. Kelly rented out under Section 8.

66. C. Kelly directed Plaintiff to perform work for the benefit of the properties owned by C. Kelly and/or G. Kelly.

67. Some of the job duties C. Kelly directed Plaintiff to perform on the properties owned and operated by C. Kelly and/or G. Kelly included maintenance and cleaning.

68. G. Kelly directed Plaintiff to perform work for the benefits of the properties owned and operated by C. Kelly and/or G. Kelly.

69. Some of the job duties G. Kelly directed Plaintiff to perform on the properties owned and operated by C. Kelly and/or G. Kelly included maintenance and cleaning.

70. Additionally, Plaintiff cooked for C. Kelly and G. Kelly nearly every day of the week and often had to cook for large group functions and events put on by Defendants.

71. C. Kelly, G. Kelly, Day-Star, and Charity Wings all use common book keeping.

72. C. Kelly, G. Kelly, Day-Star, and Charity Wings all interchange employees, such as Plaintiff.

73. Day-Star uses Charity Wings to strengthen its public image within the community.

74. C. Kelly and G. Kelly uses Day-Star and Charity Wings to strengthen its public image within the community.

75. C. Kelly, G. Kelly, Day-Star, and Charity Wings all work to provided services to the under-privileged communities in College Park, Georgia and surrounding areas.

76. While working for Defendants, Plaintiff was engaged in interstate commerce and/or in the production of goods for commerce.

77. Plaintiff traveled out of state while working for Defendants, including multiple trips to Chattanooga, Tennessee, and California.

78. In working for Defendants, Plaintiff regularly used cleaning supplies, computers, and other materials that traveled through interstate commerce while performing his job duties.

79. For example, when processing payroll for Day-Star, Plaintiff used a computer to process payroll.

80. Moreover, in working on the Section 8 housing owned and/or operated by C. Kelly, G. Kelly, and/or Charity Wings, collectively and/or individually, Plaintiff was working on apartments which received federal funds, which constitute interstate commerce.

81. Therefore, Plaintiff is individually covered under the FLSA.

82. In the three years prior to the filing of this Complaint, Defendants have been and continue to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

83. In the three years prior to the filing of this Complaint, Defendants have been and continue to be an "employer" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

84. In the three years prior to the filing of this complaint, Defendants have employed one or more individuals who handled materials that traveled in interstate commerce.

85. By way of example, Defendants' employees use computers, telephones, cleaning equipment, and tools which have traveled in interstate commerce when performing work on properties owned and operated by C. Kelly and/or G. Kelly, when fixing and/or cleaning the Day-Star properties, and/or when performing work for Charity Wings.

86. In each of the three years prior to the filing of this Complaint, Defendants annual gross volume of sales made or business done exceeded $500,000.00.

87. Defendants' annual gross volume of sales made or business done in the current calendar year will exceed $500,000.00.

88. Based upon the forgoing, Defendants formed a joint enterprise as the term is defined under the FLSA.

89. The joint enterprise formed by Defendants employed Plaintiff.

90. Therefore, Plaintiff is covered by the FLSA, under "enterprise coverage."

## FACTUAL ALLEGATIONS SHOWING PLAINTIFF WAS JOINTLY EMPLOYED BY DEFENDANTS

91. Defendants are "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

92. Plaintiff was an "employee" of Defendants within the meaning of the FLSA 29 U.S.C. § 203(e).

93. Defendant C. Kelly qualifies as an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

94. At all times relevant to this Complaint, C. Kelly had the authority to hire and fire Plaintiff.

95. C. Kelly directed Plaintiff's daily job duties.

96. For example, C. Kelly regularly directed Plaintiff to perform work on residential properties owned by C. Kelly and/or G. Kelly.

97. By way of further example, C. Kelly frequently directed Plaintiff to perform tasks on behalf of Day-Star and Charity Wings.

98. C. Kelly provided the materials used by Plaintiff to perform these tasks.

99. Based upon the foregoing, Plaintiff was an "employee" of C. Kelly within the meaning of the FLSA. 29 U.S.C. § 203(e).

100. Defendant G. Kelly qualifies as an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

101. At all times relevant to this Complaint, G. Kelly had the authority to hire and fire Plaintiff.

102. G. Kelly frequently directed Plaintiff's daily job duties.

103. For example, G. Kelly regularly directed Plaintiff to perform work on residential properties owned by C. Kelly and/or G. Kelly.

104. G. Kelly provided the materials used by Plaintiff to perform these tasks.

105. Based upon the foregoing, Plaintiff was an "employee" of G. Kelly within the meaning of the FLSA. 29 U.S.C. § 203(e).

106. Defendant Day-Star qualifies as an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

107. Plaintiff provided cleaning services at the Day-Star locations, as well as processed its payroll.

108. C. Kelly, as the CEO for Day-Star, directed Plaintiff to perform job duties at and on behalf of Day-Star.

109. Some of the job duties C. Kelly directed Plaintiff to perform at Day-Star include maintenance, cleaning services, and processing Day-Star's payroll.

110. By way of further example, G. Kelly as a part owner of Day-Star, directed Plaintiff to perform job duties at and on behalf of Day-Star.

111. Some of the job duties G. Kelly directed Plaintiff to perform at Day-Star include maintenance and cleaning services.

112. Day-Star provided the materials used by Plaintiff to perform these tasks.

113. Based upon the foregoing, Plaintiff was an "employee" of Day-Star within the meaning of the FLSA. 29 U.S.C. § 203(e).

114. Defendant Charity Wings qualifies as an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d)

115. For example, Plaintiff was employed as a Junior Director by Charity Wings and was charged with promoting Charity Wings.

116. C. Kelly, as the Chairman of Charity Wings, directed Plaintiff to perform job duties at and on behalf of Charity Wings.

117. Some of the job duties C. Kelly directed Plaintiff to perform at Charity Wings include promoting the organization and fixing and maintaining residential rental properties owned and operated by C. Kelly G. Kelly, and/or Charity Wings.

118. G. Kelly directed Plaintiff to perform job duties at and on behalf of Charity Wings.

119. Some of the job duties G. Kelly directed Plaintiff to perform at Charity Wings include fixing and maintaining residential rental properties owned and operated by C. Kelly G. Kelly, and/or Charity Wings.

120. Charity Wings provided the materials used by Plaintiff to perform these tasks.

121. Based upon the foregoing, Plaintiff was an "employee" of Charity Wings within the meaning of the FLSA. 29 U.S.C. § 203(e).

122. Based upon these facts and others, Defendants jointly employed Plaintiff.

### FACTUAL ALLEGATIONS SHOWING THAT DEFENDANTS WILLFULLY VIOLATED THE FLSA

123. Plaintiff worked for Defendants for approximately thirty-two (32) weeks.

124. Plaintiff worked approximately 60 hours per week on behalf of Defendants.

125. Defendants paid Plaintiff approximately $450.00 for the approximately thirty-two (32) weeks Plaintiff worked for Defendants.

126. Because Defendants only paid Plaintiff $450.00 for the approximately thirty-two (32) weeks Plaintiff worked for Defendants, Defendants failed to pay Plaintiff $7.25 for all hours worked.

127. Some of the hours Plaintiff worked were hours in excess of 40 per workweek.

128. Because Defendants only paid Plaintiff $450.00 for the approximately thirty-two (32) weeks Plaintiff worked for Defendants, Defendants failed to pay Plaintiff 1.5 times his regular hourly rate of pay for all hours worked over 40 per workweek.

129. Defendants knew that they failed to pay Plaintiff the minimum wage for all hours worked because they paid Plaintiff some wages.

130. Defendants knew Plaintiff worked hours in excess of 40 in certain workweeks because Defendants set Plaintiff's work schedule.

131. Defendants further knew Plaintiff was working overtime, because Plaintiff complained to Defendants about being underpaid and because Plaintiff lived with C. Kelly and G. Kelly – sleeping on their floor – during his tenure with Defendants.

132. Despite Defendants' knowledge of Plaintiff's overtime hours, Defendants chose not to compensate Plaintiff for any hours in excess of 40 in certain workweeks.

133. Defendants kept no records of Plaintiff's hours worked.

134. Therefore, Defendants violated the recordkeeping requirements of the FLSA.

## COUNT I: FAILURE TO PAY MINIMUM WAGE

135. Defendants suffered or permitted Plaintiff for to work.

136. However, Defendants failed to compensate Plaintiff for all hours worked at the required minimum wage of $7.25 per hour.

137. Defendants required Plaintiff to work off-the-clock without any compensation such that Plaintiff did not receive $7.25 per hour for all hours worked.

138. Defendants' violation of the FLSA's minimum wage provision was willful.

139. Defendants violated the FLSA with reckless disregard for their obligations under the FLSA.

140. Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiff for all unpaid minimum wages at a rate not less than $7.25 per hour, liquidated damages, attorney fees, and litigation costs.

### COUNT II: FAILURE TO PAY OVERTIME WAGES

141. Plaintiff worked hours in excess of 40 per week during certain workweeks while employed by Defendants.

142. However, Defendants failed to compensate Plaintiff for all hours worked, including those in excess of 40 per workweek.

143. Defendants failed to compensate Plaintiff at not less than 1.5 times his regular rate of pay for all hours worked over 40 in certain workweeks.

144. Defendants permitted Plaintiff to work hours in excess of 40 during certain workweeks.

145. Defendants knew or should have known that Plaintiff worked in excess of 40 hours during certain workweeks.

146. Defendants' violations of the FLSA's overtime provision, 29 U.S.C. § 207, were willful.

147. Defendants violated the FLSA's overtime provision with reckless disregard for Plaintiff's rights.

148. Pursuant to U.S.C. § 216(b), Defendants are liable to Plaintiff for all unpaid overtime wages, liquidated damages, attorney fees, and costs of litigation.

## DEMAND FOR JUDGMENT

Based on the allegations set forth in this Complaint, and the evidence as it is developed in this case, Plaintiff respectfully requests:

(a) A declaratory judgment against Defendants that they violated the FLSA;

(b) A declaration that the violation of the FLSA was willful;

(c) A monetary judgment against Defendants, including:

  i) Unpaid minimum wages;

  ii) Unpaid overtime wages;

  iii) Liquidated damages;

  iv) Reasonable costs and attorney fees; and

  v) Prejudgment interest; and

(d) Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff demands a jury trial on all issues triable by a jury.

Respectfully submitted: June 13, 2018.

|  |  |
|---|---|
|  | *s/William S. Cleveland* |
| POOLE HUFFMAN LLC | William S. Cleveland |
| 315 W. Ponce de Leon Ave | Georgia Bar No. 721593 |
| Suite 344 |  |
| Decatur, Georgia 30030 |  |
| Phone: (404) 373-4008 |  |
| william@poolehuffman.com | Counsel for Plaintiff |